IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARRELL BOYETTE, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>    v.<br><br>BOJANGLES', INC., WILLIAM A. KUSSELL, STEVEN J. COLLINS, JOHN E. CURRIE, CHRISTOPHER J. DOUBRAVA, TOMMY L. HADDOCK, ROBERT F. HULL, JR., STARLETTE JOHNSON, JAMES R. KIBLER, MARK A. ROWAN, and STEVEN M. TADLER,<br><br>              Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Darrell Boyette ("Plaintiff") by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Bojangles', Inc. ("Bojangles'" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning the Company and the Defendants.

**SUMMARY OF THE ACTION**

1. Plaintiff brings this class action on behalf of the public shareholders of Bojangles' against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company in an all cash transaction with Walker Parent, Inc.[1] ("Walker" or "Parent") through its wholly owned subsidiary Walker Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On November 6, 2018, Bojangles' announced that it had entered into a definitive agreement (the "Merger Agreement") with Walker, pursuant to which Merger Sub will merge with and into the Company (the "Merger"), with the Company continuing as the surviving corporation and a wholly owned subsidiary of Walker. Pursuant to the terms of the Merger Agreement, Bojangles' stockholders will receive $16.10 per share (the "Merger Consideration").

3. The consummation of the Proposed Transaction is subject to certain closing conditions, including the approval of the stockholders of Bojangles'. The Company currently has scheduled a special meeting of shareholders to vote on the Proposed Transaction for January 10, 2019.

4. On December 10, 2018, in order to convince Bojangles' stockholders to vote in favor of the Proposed Transaction, the Board, jointly with Walker, authorized the filing of a

---

[1] Walker is a Delaware corporation that is indirectly owned by (i) Durational Walker LP ("Durational Walker"), an investment fund affiliated with Durational Capital Management, LP ("Durational"), and (ii) The Resolute Fund IV, L.P. ("Resolute"), an investment fund affiliated with The Jordan Company, L.P. ("TJC"). It is contemplated that at or prior to consummation of the merger, TEI Investment Pte. Ltd. ("TEI") will become an additional indirect owner of Walker in connection with the equity. Durational Walker, Resolute, and TEI are referred to collectively as the "sponsors." The sponsors have committed to capitalize Walker with up to $145 million of equity financing in connection with the Proposed Transaction.

materially incomplete and misleading definitive proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Bojangles' and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Bojangles' stockholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

7. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of Bojangles' common stock.

10. Defendant Bojangles' is a Delaware corporation with its principal executive offices located at 9432 Southern Pine Boulevard, Charlotte, North Carolina 28273. The Company's common stock is traded on the NASDAQ under the symbol "BOJA."

11. Defendant William A. Kussell ("Kussell") is and has been the Chairman of the Company's Board at all times during the relevant time period.

12. Defendant Steven J. Collins ("Collins") is and has been a member of the Company's Board at all times during the relevant time period.

13. Defendant John E. Currie ("Currie") is and has been a member of the Company's Board at all times during the relevant time period.

14. Defendant Christopher J. Doubrava ("Doubrava") is and has been a member of the Company's Board at all times during the relevant time period.

15. Defendant Tommy L. Haddock ("Haddock") is and has been a member of the Company's Board at all times during the relevant time period.

16. Defendant Robert F. Hull, Jr. ("Hull") is and has been a member of the Company's Board at all times during the relevant time period.

17. Defendant Starlette Johnson ("Johnson") is and has been a member of the Company's Board at all times during the relevant time period.

18. Defendant James R. Kibler ("Kibler") is and has been a member of the Company's Board and the Company's interim Chief Executive Officer at all times during the relevant time period.

19. Defendant Mark A. Rowan ("Rowan") is and has been a member of the Company's Board at all times during the relevant time period.

20. Defendant Steven M. Tadler ("Tadler") is and has been a member of the Company's Board at all times during the relevant time period.

21. Defendants Kussell, Collins, Currie, Doubrava, Haddock, Hull, Johnson, Kibler, Rowan, and Tadler are collectively referred to herein as the "Individual Defendants."

22. Defendant Bojangles', along with the Individual Defendants, are collectively referred to herein as "Defendants."

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Bojangles' (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

24. This action is properly maintainable as a class action for the following reasons:

a. The Class is so numerous that joinder of all members is impracticable. As of November 5, 2018, there were 37,548,674 common shares of Bojangles' outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Proxy Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy Statement as currently composed.

  c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

  d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

  e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

  f. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

25. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

26. Bojangles', a Delaware corporation, is a growing restaurant operator and franchisor dedicated to serving customers high-quality food made from Southern recipes. Founded in 1977 in Charlotte, North Carolina, Bojangles' serves menu items such as made-from-scratch biscuit breakfast sandwiches, hand-breaded bone-in chicken, other various sides.

### The Company Announces the Proposed Transaction

27. On November 6, 2018, the Company issued a press release announcing the Proposed Transaction, which stated, in pertinent part:

6

**CHARLOTTE, N.C. — (Globe Newswire) — November 6, 2018** — Bojangles', Inc. (Bojangles', the "Company") (NASDAQ: BOJA) today announced that it has entered into a definitive agreement to be acquired by Durational Capital Management LP and The Jordan Company, L.P. Under the terms of the agreement, Durational Capital Management LP and The Jordan Company, L.P. will acquire the Company in an all cash transaction. Bojangles' stockholders will receive $16.10 per share, representing a 39% premium to the closing share price of February 12, 2018, a day prior to initial speculation regarding a potential transaction involving Bojangles' and a premium of approximately 30% to the 90-day volume weighted average price ending on February 12, 2018. The offer represents a 15% premium to the closing share price of September 27, 2018, a day prior to a published report that Bojangles' is exploring strategic alternatives.

**Transaction Details**

The acquisition, which has been unanimously approved by Bojangles' Board of Directors, is subject to stockholder approval and other customary closing conditions. Concurrently with the execution of the acquisition agreement, Bojangles' majority stockholder executed a customary voting agreement whereby it agreed (among other things) to vote its shares in favor of the acquisition. The transaction is expected to be completed in the first quarter of fiscal year 2019. Upon closing of the transaction, Bojangles' will continue to be operated as an independent, privately-held company and will remain based in Charlotte, N.C.

**Statements by Randy Kibler and William Kussell, Bojangles'**

"For the Bojangles' family of employees, franchisees, and our customers, today's announcement represents an exciting next phase for this great brand. The new ownership group is committed to maintaining the qualities of this brand that have sustained it for over four decades," said Randy Kibler, Bojangles' Interim President and CEO.

"In consultation with our outside advisors, the Board of Directors has been evaluating several strategic alternatives over the last several months. We are confident that this agreement offers a promising opportunity to realize the highest value for our stockholders while providing a strong path forward for the Bojangles'® brand, its employees, franchisees, and loyal customers," said William A. Kussell, Director and Non-Executive Chairman of Bojangles'.

**Statements by Durational Capital Management and The Jordan Company**

"Bojangles' is an iconic brand with an authentic Southern heritage and a deeply loyal following," said Eric Sobotka, Managing Partner at Durational Capital Management. "We have admired the brand and its high quality and craveable food for years, and we look forward to partnering closely with the employees and franchisees to drive its future growth and continued success."

"Bojangles' has a differentiated offering, a talented team of employees and dedicated franchisees that are committed to their businesses and their communities," said Ian Arons, Partner at The Jordan Company. "We are excited to invest in a company with such great growth potential, and we believe that with our and our partners' support, Bojangles' will be well-positioned for long-term success."

**Advisors**

BofA Merrill Lynch acted as financial advisor and Shearman & Sterling LLP acted as legal counsel to Bojangles' and its Board of Directors. Houlihan Lokey also acted as financial advisor to Bojangles' and its Board of Directors.

Citigroup Global Markets Inc. served as financial advisor to the consortium and, together with KKR Capital Markets LLC, provided fully committed financing in support of the transaction. Akin, Gump, Strauss & Feld LLP, Kirkland & Ellis LLP, and Seyfarth Shaw LLP acted as legal counsel in connection with the transaction.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

28.     On December 10, 2018, the Company filed the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's stockholders vote in favor of the Proposed Transaction.

29.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Management's Financial Projections Prepared

30.     The Proxy Statement contains financial projections prepared by Bojangles' senior management given to the Board, Merrill Lynch, and Houlihan Lokey in connection with the Proposed Transaction, but fails to provide material information concerning such.

8

31. Specifically, the Proxy Statement contains projections for the Company's Free Cash Flow for fiscal years 2018 through 2023, but fails to disclose how these projections were determined. In addition, the Proxy Statement does not disclose Unlevered Free Cash Flows for the Company during that same time period.

32. The omission of the above-referenced projections and metrics renders the financial projections included in the Proxy Statement materially incomplete and misleading. If a proxy or registration statement soliciting a shareholder vote discloses financial projections and valuation information, such projections must be complete and accurate

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Merrill Lynch's Financial Opinion

33. The Proxy Statement contains the financial analyses and opinion of Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") concerning the Proposed Transaction, but fails to provide material information concerning such.

34. With respect to Merrill Lynch's *Selected Publicly Traded Companies Analysis*, the Proxy Statement does not disclose: (i) the basis for selecting the seven publicly traded companies used in Merrill Lynch's analysis; (ii) the market cap for each comparable company; (iii) the basis for Merrill Lynch applying calendar year 2019 EBITDA multiples of 8.0x to 10.0x derived from the selected publicly traded companies; and (iv) the reason for using different dates for when calculating the EV/EBITDA of the selected companies including El Pollo Loco, Sonic Corporation, and Zoe's Kitchen.

35. With respect to Merrill Lynch's *Selected Precedent Transactions Analysis*, the Proxy Statement does not disclose: (i) the basis for selecting the six transactions used in Merrill Lynch's analysis; (ii) the total value of each selected transaction; (iii) the LTM EBITDA for each target company in the selected transactions; (iv) the basis for applying LTM EBITDA multiples of 8.5x to 10.5x.

36. With respect to Merrill Lynch's *Discounted Cash Flow Analysis*, the Proxy Statement does not disclose: (i) the definition of "unlevered, after-tax free cash flows," nor how the value was determined; (ii) the basis for reaching perpetuity growth rates ranging from 1.0% to 2.0%; and (iii) the basis for using discount rates ranging from 9.0% to 11.0%.

37. With respect to Merrill Lynch's *Other Factors*, the Proxy Statement notes that Merrill Lynch referenced certain information for informational purposes, but does not disclose: (i) which publicly available research analysts' one year price targets for the Company were chosen; and (ii) the basis for using an illustrative discount rate of 11.0%.

38. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

39. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Houlihan Lokey's Financial Opinion**

40. The Proxy Statement contains the financial analyses and opinion of Houlihan Lokey Capital, Inc. ("Houlihan Lokey") concerning the Proposed Transaction, but fails to provide material information concerning such.

41. With respect to Houlihan Lokey's *Selected Companies Analysis*, the Proxy Statement does not disclose: (i) the basis for applying rangers of 9.5x to 10.5x to Bojangles' LTM Adjusted EBITDA; (ii) the basis for applying ranges of 9.0x to 10.5x to Bojangles' estimated NFY Adjusted EBITDA; and (iii) the basis for applying ranges of 9.0x to 10.0x to Bojangles' estimated NFY + 1 Adjusted EBITDA.

42. With respect to Houlihan Lokey's *Selected Transactions Analysis*, the Proxy Statement does not disclose (i) the total transaction size for each of the transactions selected; and (ii) the basis for applying a selected multiple range of 10.0x to 11.0x to Bojangles' LTM Adjusted EBITDA.

43. With respect to Houlihan Lokey's *Discounted Cash Flow Analysis*, the Proxy Statement does not disclose: (i) the basis for applying a range of terminal value multiples of 8.0x to 9.0x to the Company's projected Adjusted EBITDA for the fiscal year ending December 2023; and (ii) the basis for applying discount rates ranging from 8.5% to 9.5%.

44. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Background of the Proposed Transaction

45. The Proxy Statement omits material information relating to the sales process leading up to the Proposed Transaction.

46. The Proxy Statement notes that between October 2017 and January 2018, Durational, Strategic A, and Sponsor B, contacted Board members affiliated with the Company's majority stockholder (Advent) regarding potential interest in a strategic transaction. However, the Proxy Statement fails to disclose whether any of the independent members of the Board not

11

affiliated with Advent were informed, nor does it disclose whether any transaction was ultimately discussed.

47.     Next, the Proxy Statement does not disclose details concerning indications of interest from other potential suitors.  Specifically, the Proxy Statement notes that the Company entered into confidentiality agreements with Durational, Strategic A, Sponsor B, Sponsor C, Sponsor D, Sponsor E, and 17 other unidentified potential suitors, but fails to disclose whether any such agreements contained "don't ask, don't waive" provisions which would preclude the potential suitors from making a topping bid for the Company.

48.     In addition, the Proxy Statement refers to a "standalone plan" being considered by the Company in the event it were to remain an independent public company, but fails to disclose the contents of the plan.

49.     Lastly, Sponsor B, Sponsor D, and Strategic A informed the Company that they were no longer interested in pursuing a transaction with the Company on September 4, 2018, October 1, 2018, and October 14, 2018 respectively, but the Proxy Statement fails to disclose a reason for their decision not to pursue a transaction.

50.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transaction.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the

use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

53. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

54. The Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

55. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

56. The Defendants knew or were negligent in not knowing that the Proxy Statement

is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

57. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

58. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

59. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

60. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

# COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

61.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

62.     The Individual Defendants acted as controlling persons of Bojangles' within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Bojangles', and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

63.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

65.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the

Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

66. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

67. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

68. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. Directing the Individual Defendants to disseminate an Amendment to its Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.	Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.	Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.	Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 13, 2018	Respectfully submitted,

By: _____
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ & MILLER LLP**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*

## **SWORN CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS**

I, Darrell Boyette, hereby certify that:

1. Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.

2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Boj securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.

5. I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 12/11/2018

*/s/ Darrell Boyette*

    Signature

## **Exhibit A**

My transactions in Bojangles', Inc. (BOJA) securities that are the subject of this litigation during the class period set forth in the complaint are as follows ("P" indicates a purchase, "S" indicates a sale):

| Security | Date | Sale | Purchase | Number of Shares | Price per Share |
|---|---|---|---|---|---|
| BOJA | 6/22/2015 | | P | 1,000 | $23.50 |